Your Honor, my name is Jennifer Monk on behalf of Praise Christian Center. Okay, why isn't this case new? The church's assertion of both actual and nominal damages from the time of the initial filing of the complaint creates a live controversy that still exists today. Are damages available under RLUPA, R-U-P-A, the law that we're fighting down here? I call it RLUPA. I don't know if that's the correct phrasing, but... Are damages available? Yes, Your Honor. RLUPA allows successful plaintiffs to obtain appropriate relief against the government. In Franklin, the United States Supreme Court stated that appropriate relief included an injunctive relief, declaratory damages, declaratory relief, and damages. And afterwards, Congress actually took that language, appropriate relief verbatim, put it in a RFRA, and then placed it into RLUPA later, after RFRA was declared unconstitutional. No, do me a favor. Give me the whole statute without RFRA for whatever you said. RLUPA? The Religious Land Use and Institutionalized Persons Act? That's what I like. There's not enough time. What were the circumstances of the church's leaving? What did it have anything to do with the sprinkler issue? Yes, Your Honor. As a result of the sprinkler issue, the church actually was not able to inhabit the building. So it was actually meeting in an open air canvas tent out front. And in October of 2004, it was quite a while ago, the church left the property primarily because winter was coming again. And as I'm sure you can imagine, it gets quite cold out there in the parking lot in an open air tent for the church to meet on a Sunday morning. So the church decided to relocate. However, since the beginning of this lawsuit, from the initial complaint, the First Amendment complaint, the church has alleged damages at all times. And in fact, asked the district court for a judgment on liability and then a trial on damages. What damages is the church claiming? Your Honor, the church's damages, although they have never, it's an issue of fact that the district court never decided. What are you claiming? Ties, lost ties, the fees that were sent to the city in order to obtain the conditional use permit. As a result of a loss of membership, there was quite a loss in ties throughout the years. In addition, the cost of moving to another location and obtaining a new lease. There are significant damages. But in addition to that, even if there are not actual damages, there are nominal damages as well. In Bernhardt versus County of Los Angeles, the Ninth Circuit stated that nominal damages will create a live controversy. And this case is not moot. And Your Honor, in the order that was sent on Friday, you asked the parties to explain why we did not include in the record that this church had moot. To be honest, the church moved three years ago because of the damages claim. How are we supposed to know the church moved? Your Honor, I understand. You're supposed to keep us up to date. Your Honor, I understand. And I apologize if that is a problem from our perspective. You put us through a lot of unnecessary work. Well, from our perspective, because of the damages claim, it was never an issue that the church moved. No, you're not answering my question, my statement. You put us through a lot of unnecessary work. I'm sorry, Your Honor, that there was unnecessary work. I mean, that's part of your job is to be open with the court. Let us know what's happening, not to have us have to ask you for information. The church certainly understands that. And it was addressed in the motion. Do you understand that? Yes, Your Honor, I do. I do understand it. And to be honest, the church and us as counsel never felt that it was an issue because of the damages that we were sure that the case was not moved as a result of the damages claim. And the church is leaving the property. It was so long ago that it just never was brought up this late. And... Well, did you bring that argument up before the magistrate? Before the district court, Your Honor? No, our... Oh, the commissioner? Commissioner, I'm sorry. We did respond to the city's motion to dismiss stating that we had a damage... The church had a damages claim and that we felt that that took care of the mootness issue. Do you have anywhere alleged that the city acted with discriminatory intent? Your Honor, that is an issue that the church does not believe is part of the equal terms analysis. It's never been addressed. Well, but that's what at least one of our cases has held is required in order to secure Have you ever alleged that? We have never alleged it. It's never been discussed. That is an issue... Well, I would think if you moved three years ago and creating the issue of mootness out there that you would examine whether or not you have a claim for discriminatory intent, which is the only way you can salvage our jurisdiction over this case. Even with Ferguson, the case that you're referring to, the 9th Circuit. You know about this case, but you're withholding it. Why? No, not withholding it at all. It is the church's assertion that that case does not apply here, that our loop is different from Title VI and the ADA. Well, if that's true, maybe that's something you needed to have discussed with us. Absolutely, Your Honor. That argument was first raised in the reply brief actually to the motion of dismiss. The church has never briefed that issue and we would ask for supplemental briefing if that is an issue that should be determined here. We answered, in our reply brief, we answered what was addressed in the city's answering brief and they never addressed the issue of damages or the issue of discriminatory intent regarding our loop and damages. In addition, the church believes that under the applicable case law, nominal damages would still be possible. Well, this has all got to do with a fire sprinkler requirement. Yes, Your Honor. So the people that are here listening intently know what it's about. Yes, Your Honor. You would concede that the law itself, the fire code, is neutral. It has no, it has, there's no religious animus anchoring the adoption of the fire code, correct? On its face, it is neutral. And it's generally applied in terms of the Smith and Lukumi tests. It's generally applied. You have some difference of opinion with respect to whether it's uniformly applied as to at least 26 comparators, but that evidence didn't get in. Yes, Your Honor. It did not get in, but that was an error by the district court. The district court held that because our expert witnessed Mr. Harper's declaration, the district court said that he lacked personal knowledge of the building and failed to note that in his declaration, he stated that he visited 11 of the buildings and he reviewed official city documents for the remaining 15, and that as a result, the city did not require fire sprinklers. But even more importantly, perhaps, the city admitted in its statement of genuine issues that there were no fire sprinklers in the building. And as a result of the district court's holding that it was unsure of just that one issue regarding the fire sprinklers, the district court failed to consider any of the church's evidence as to the 26 comparators and therefore never really ruled on the merits of the case, which the church believes was an abuse of discretion. The evidence in this case is supported not only by Mr. Harper's declaration, which is enough. He states that he did visit the properties and that there were no fire sprinklers within the properties and that the city did not require fire sprinklers in the 15 that he reviewed. However, because the city admitted it, at the very minimum, the rest of Mr. Harper's declaration, which goes on for another 10 pages with regard to the change of occupancy for each of those 26 examples, should have been admitted. And the district court failed to consider any of that evidence here. In addition to that, however, the district court also erred in its analysis of that our loop is equal terms provision is akin to the equal protection clause. And that is not true of even the legislative history indicates that the equal terms provision actually codifies the free exercise clause. And as your, your honor was indicating earlier that it is not the discriminatory treatment that the church has had forced upon it by the city is not a neutral and generally applicable law because of the discriminatory treatment. And therefore our loop applies. You have no evidence of any, any specific animus. I mean, oftentimes, for example, in Lakumi in the Santa Ria case, there's all sorts of legislative history and other things that indicated that, that the motivation was to, to read this town of the Santa Ria church. Yes, sir. There are other cases that are a similar circumstance. You don't have any of that here. Do you know your honor? But fortunately under our loop is equal terms provision. We don't need to prove that our loop is equal terms provision simply States that a religious assembly that has treated it on less than equal terms than a non-religious assembly is a violation of our loop is equal terms provision. That's all that is required. And no circuit has held the discriminatory intent is required in order to show that our loop is premised on nine hearings before Congress showing intentional discrimination against churches and the type of discrimination that occurs all across America. It was unanimous, unanimously passed in order to protect churches. And therefore it does not require any discriminatory animus as would be true in the free exercise. But if a fire department, for example, is overstaffed, I mean, understaffed, overworked, and, and there are two or three places that don't get inspected on a regular basis. And for whatever reason, their change in occupancy goes unnoticed. Is our loop a really a provision that says the religious institution gets the best of anything they can find out there in by their comparators? I mean, if, if, if, if a bar or a restaurant should have been, should have been sprinklered, but it wasn't, that's, that's the church's entree into, into throwing caution to the wind and eliminating the fire code as to them? Your Honor, I understand your concern. In this case, it's not really an issue because we have 26 cases and the, the city in their opposition or in their answering brief to this court stated 11 of these are mistakes. I believe it was 11 and six of them are under investigation as to why the, why the fire code was applied that way. That's a lot of mistakes. It isn't just two or three, although by the And even if that seems harsh in Lamy versus United States, the Supreme Court stated that even if it results in a harsh outcome, it is the duty of the courts to apply the, the legislation as Congress passed it, even though it seems like two or three might not be enough, two or three mistakes, but that isn't true in this case either way. Your Honors, if you have no more questions, I'd like to reserve the rest  Good morning. Let me take up the, the question of the supplemental order first. I think it's very important as the court has noted that there is simply no evidence of any discriminatory animus that anything, I'm sorry, keep your voice up. I'm sorry, Your Honor. In terms of the question of mootness, I think that as the court has indicated and the appellants have conceded, there simply is no evidence of discriminatory animus. For that reason, this case should be dismissed in the Redwood city case. I'm sorry, the Redwood church case that we've cited in our reply brief on the mootness question, the court held there under this, this court's interpretation of the ADA that in order to claim damages, compensatory damages under a statute like this, looking at similar language as in this statute, the statute granted the courts to grant appropriate relief that if they're going to claim compensatory damages, they need to show discriminatory animus, some sort of specific intent to discriminate against religion. Now, was that a district court case? That's a district court case. And we would be ruling on this issue for the first time for our circuit, right? You would be ruling on that question for the first time. And in fact, that case is on appeal now to this court. Okay. Isn't there an 11th circuit case that says the opposite? Do you remember the name of that case? Yes, that's, I think that's out of Alaska. And I did read that case, but I, as I recall, it did not discuss the issue of discriminatory animus. And, and it, and it, and, and keep in mind that, you know, under, under this court's interpretation of Franklin versus Gwinnett in, I'm blanking out now in, I think it's the Ferguson case, the court was very clear that in fact, at least in this court has held, interpreting like language as in our LUPA, that discriminatory animus must be shown. And in fact... Is there any other relief that the church could get? Did they seek declaratory relief? What they saw, and, and I'm, and I have to say that I'm a little surprised for them to say that the, the damages has always been before them, before this court. In their opening brief, all right, they stated very clearly that what they were seeking was an injunction against the city to allow them to operate without fire sprinklers. And as I listened to the oral argument, apparently they had lost their lease before they filed their opening brief. Now, now we were not aware until, until we filed our reply brief that in fact they had moved. The reason we discovered they moved principally was somebody noticed a sign nearby city hall that showed Praise Christian Church was operating in this other location. But obviously this issue arose, at least from our perspective, after briefing, or after the appeal had been initiated and we had no opportunity to, there was no means to conduct discovery as to exactly how they lost the lease, when they moved, et cetera. That was really up to them to, to come forward with. Now, I think the most important issue to keep in mind this case is as the court has pointed out and plaintiffs, appellates have conceded, there's nothing in the code itself that reflects any discrimination between religious and non-religious assemblies. And under the Primera Inglesia case, this, this type of case under the Equal Terms Clause is in effect a selective enforcement case, but that's the nature of their allegation, that they, that we are selectively enforcing against religious assemblies and letting non-religious assemblies off. And I'd like to quote from Primera Inglesia. In this type of case where we have selective enforcement, the plaintiffs must present evidence that a similarly situated non-religious comparator received differential treatment under the challenge regulation. If a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment and the plaintiff has failed to meet its initial burden of proof. That's what we had in this case, and that's why the court, the district court held that they had offered no competent evidence that would show discrimination. It wasn't just that they, that, that the court struck the conclusory aspects of the Harper Declaration, it's that all the evidence they offered, none of it arose to the level of showing selective enforcement. And I'd like to talk about that evidence a little bit. Again, it's undisputed that there is no evidence of animus towards religion by the city. And it's also undisputed that the city imposed retrofitting with sprinklers on both religious and on non-religious assemblies. Let me point out in the record, for example, non-religious assemblies, we required Claremont High School to retrofit with sprinklers. That's at the page 357 of the supplemental excerpt of record, paragraph 24. We required Paradise Fitness, a gymnasium, to retrofit. That's also at page 357, paragraph 23. We also required religious assemblies to retrofit. The Evangelical Free Church and the Beach View Friends Church, which has since, and the latter has since converted to a gymnasium. In all those cases, and those are also at page 357, in all those cases, we were, we enforced the sprinklers in a non-discriminatory manner. We admit we made mistakes. Let me give the example of the case of the two yoga studios. One was at 714 Adams. One was at 8857 Adams. Both these studios came into shopping center malls. They were both 1,500 square feet suites. In the first case, the certificate of occupancy was issued. Admittedly, it said A3, which was an assembly, but the occupancy load was 45 people, which is less than 50, which is less than an assembly. In the other case, same 1,500 square foot studio, we issued a certificate of occupancy that had an occupancy load of 294 persons and 1,500 square feet. Your Honor, that's preposterous. We admit we made a mistake. That was wrong. You can't even fit 294 people in 1,500 square feet. It proves nothing, and clearly it's not a similarly situated comparator. The other thing the evidence could show is that we recognize that retrofitting is expensive. And we don't apply retrofitting in a hyper-technical way. For example, one of the cases that they cited as evidence of selective enforcement actually is a case of a church that's at 20112 Magnolia. In that case, the church opened up a new sanctuary of 30,000 square feet. Now, we required them to put sprinklers, and sprinklers were installed, but we did not require that the existing sanctuary be retrofitted. All right, that was a case of recognizing that that was a legal nonconforming use, and we applied the code in a reasonable, appropriate way. On the other hand, they also cite a case of a pool hall that was about 5,000 square feet. Now, that was in a shopping mall where the building in question already had two firewalls installed, and the certificate of occupancy shows that for that pool hall, there was only 88 people allowed over 5,000 square feet. That's just the reasonable application of the ordinance. On the other hand, in this case, Praise Christian is seeking to use... That's pretty. Not a fire alarm. I would have thought it would have been the Marine Corps hymn that you had on your... Well, I'm humble today. You want to make a call, do you? Well, I thought I'd get sanctioned for that, but... I'll turn it off. Sorry. I got to... This thing is so complicated. All right. I don't know how to turn it off. You know how to turn it off? Don't worry. I'll never hold anybody in contempt of court for having their cell phone on. In the Orange County Superior Court, it's a $100 fine. Seriously? Well, they know how to make money. Is ours $150 or $100? I think ours is $150. We really know how to make money. Do we do that? We don't do that. No. I got on vibrate. We just shoot the judge. It's on vibrate, I think. Why don't we just put it in the back room for now? Yeah, let me give it to Lucy. If you lose it, it's all right. Shall I proceed? I was talking... I'll ring the bell. I was talking... Again, one of their comparators was this pool hall. All right, 5,000 square feet, no more than 88 people, according to the certificate of occupancy. That's an extremely low occupancy load. You know, their comparators aren't even in evidence, are they? Well, most of their comparators are not evidence. Right. So what's your response to their argument that the church erred or abused its discretion in excluding the Harper Declaration? My response is twofold. First off, the Harper Declaration contains a tremendous amount of hearsay. Right? For example, he makes, in paragraph... Let me just get my citation correct. For example, at page 78 of the excerpt of record, paragraph 15, he makes the conclusory statement that the city did not require installation of sprinklers. He doesn't know that. He had no way of determining what the city did or did not require. All he could do was look at buildings and look at certificates of occupancy. Now, we don't dispute that the certificates of occupancy themselves are evidence. All right, but none of that evidence shows selective enforcement. And that's why the district court said, both in terms of all the other evidence they offered, and concluded they offered no competent evidence of any sort of discrimination, of any sort of selective enforcement between religious and non-religious assemblies. And to jump back just a second, the point I wanted to make was, in the case of a Praise Christian Center, they were seeking to take a little over 2,000 square feet of a 22,000 square foot building, which was an over 80-year-old warehouse that had once been an oil pumping station, and use that as an assembly area that would allow 324 people to assemble there. This is not a hard case. This is not a hyper-technical case. This is a clear case under the zoning code that said either you break up that building, all right, by putting a firewall, which was one of their options, or you put sprinklers in. And as we've pointed out, we have applied this kind of requirement, retrofitting, to gymnasiums, to schools, to churches, on a consistent basis. We may have made mistakes, but none of those mistakes reflect any type of selective enforcement. And under primaria inglesia, they need to show a similarly situated comparator. And none of this evidence involves a similarly situated comparator. What would you, just as a hypothetical, include as a similarly situated comparator? Well, I think the obvious case is the case that came out of the 11th Circuit in Konikov, all right? That was a case where at issue was home Bible study. They took the deposition, the plaintiffs took the deposition of a code enforcement officer, and he testified, or maybe it was a she, but there was direct testimony that said that if we had meetings three times a month, four times a month in a home of, say, the Cub Scouts, we would not treat that as a assembly, all right, as a primary use. But in the case of the Jewish Jewel, they said, well, we would treat that as a religious organization. Well, in that case, there was direct evidence and, you know, clearly there was some sort of selective enforcement because the city admitted to it. Now, they took all of our depositions. They took the fire marshal's deposition. We offered the fire marshal's deposition. I mean, I'm sorry, we offered the fire marshal's declaration into evidence, all right? There is no such evidence in this case of that kind of selective enforcement. I'll be glad to ask, unless you have any other questions, I'll sit down. All right. Thank you very much. Thank you. Your Honors, to begin with, I would like to address the discriminatory intent issue pertaining to the mootness and the availability of damages. The discriminatory intent is a question of fact that the district court never reached, and Your Honor, Justice, Judge Wardlaw, you asked if we had ever alleged discriminatory intent. We did, in fact, allege discriminatory intent in the equal protection section of the complaint and that cause of action because discriminatory intent is not required to show equal terms on the face of the statute. And therefore- The only thing that's remaining, though, the only issue on the act, right? Yes, Your Honor. That's the only issue. The Religious Land Use and Institutionalized Persons Act. So if that's the only issue on appeal, the question is whether that issue is moot or not. Right. I understand that. And your other question, did we have a declaratory relief? Yes, we did ask for declaratory relief. We also asked for damages. And the discriminatory intent is an issue of fact. In addition, nominal damages should still be available even if we are not able to show discriminatory intent and cannot obtain actual damages. And finally, we would ask again that if you are going to consider that, that we would be given the opportunity to brief that issue as it came in a reply brief to motion to dismiss, but of course was not heard. The commissioner ruled on it and we have never addressed that issue prior to today. The church has never been able to. When did the church actually, did the church lose its lease? Is that- It moved away from the property because it was in October of 2004 approximately. Okay. And you filed your appeal brief February 2007. Yes. And didn't mention it. Your Honor, the church did not believe it was relevant because of the damages. Because we alleged damages, because we had nominal damages, we did not feel that, the church did not feel that the case was moot and therefore did not bring it up. And I apologize for that oversight. Well, that's a little deception too, you know. Your Honor, we certainly did not intend any deception. That's what we're here talking about. It probably wouldn't even be here. Your Honor, because of the damages claim, there is a live controversy still between these two parties. The city is arguing only- We had to dig to get into this issue. You never called it to our attention. We called it to your attention and asked you to respond. Isn't that right? Yes, Your Honor. That is correct. That's the way to practice law, is it? No, Your Honor. However, because of the damages, we did not feel that it was an issue. You're just hiding the ball. You put us through a lot of time and a lot of effort and a lot of work to try to finally figure out what's really going on here. Your Honor, it was not the intent of the church to hide the ball or counsel in any way. I don't care what the intent was. That's what the effect of it was. As a result of the damages, it is our contention that the case is not moot and the city is here arguing only several examples of 26 comparators. These are factual questions that should be determined by the district court. Our evidence is admissible. It was never considered. Those are issues that should be determined by the district court, not here before an appellate court, arguing specific instances of whether it was a mistake, whether the city simply made a mistake, or what those mistakes amount to in terms of whether the equal terms provision was violated. We are asking this court to require the district court to consider our evidence. We aren't asking for a trial today, and no trial has occurred. Damages have not been determined, and that is an issue of fact. Discriminatory intent is an issue of fact. The city should be held strictly liable for its violation of the equal terms provision, regardless of whether it was a mistake, pursuant to the very basic terms of the statute. That is what the statute says on its face. Not that it requires discriminatory intent. Not that we have to show animus, but that the city cannot treat a religious institution, the church in this case, on less than equal terms than a non-religious assembly. And we brought forth 26 examples of that occurring within the city of Huntington Beach, within a certain amount of time, pertaining to this fire code. And that is enough evidence for this court, the district court, to rule on the liability against the city, and to move forward and determine damages, and whether damages are available under our LUPA, which is perhaps a question to be determined later. If actual damages are owed by the city, that is an issue that can be addressed at a later appeal, or perhaps supplemental briefing. But because of the nominal damages, because of the declaratory relief, this case is not moot, and it is properly before this court. If there are no further questions. Thank you. Thank you. Matters submitted.
judges: Pregerson, Wardlaw, Leighton